UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GENX PROCESSORS MAURITIUS LIMITED,<br><br>Plaintiff,<br>v.<br><br>MATTHEW G. JACKSON a/k/a MATT G. JACKSON, et al.,<br><br>Defendants. | Case No. 2:14-cv-01938-APG-PAL<br><br>**ORDER**<br><br>(Mot. to Compel – ECF No. 58;<br>Mot. Exceed Page Limits – ECF No. 60) |

This matter is before the court on Plaintiff Genx Processors Mauritius Limited's Motion to Compel Responses to Subpoenas and Attorney Fees (ECF No. 58) and Motion to Exceed Page Limits (ECF No. 60). These Motions are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 of the Local Rules of Practice. The court has considered the Motions, Opposition (ECF No. 59) filed by Nonparties Vinum, Inc.; Caymus Limited Partnership; Ecommerce Marketing, Inc.; T-3 Media, LLC; Wild West Media, LLC; Pacific Coastal, LLC; and Consumercoupons.com, Inc.; and Reply (ECF No. 61). For the reasons explained, the Motions are granted, but the request for attorney's fees and costs is denied.

**BACKGROUND**

**I.     THE PLEADINGS AND DEFAULT JUDGMENT**

Plaintiff commenced this action on November 21, 2014, by filing a Complaint (ECF No. 1) against defendants Symmetric Systems, LLC ("Symmetric, LLC"), and Matthew G. Jackson a/k/a Matt G. Jackson ("Jackson"). The complaint stated five claims: (1) breach of contract against Symmetric, LLC, (2) conversion against all defendants, (3) deceptive trade practices against Symmetric, LLC, (4) fraud against all defendants, and (5) alter ego against Mr. Jackson.

The defendants failed to answer or otherwise respond to the complaint. Plaintiff therefore

1

sought entry of default against Symmetric, LLC and Mr. Jackson. ECF Nos. 6, 8. The Clerk of Court entered default against them. Clerk's Default (ECF Nos. 7, 9). In April 2015, Plaintiff filed a Motion for Default Judgment (ECF No. 10). District Judge Andrew P. Gordon granted default judgment against both Symmetric, LLC and Mr. Jackson in the amount of $555,576.19. Sept. 18, 2015 Order (ECF No. 11).

Twelve days after entry of default judgment, Symmetric, LLC, converted from a Nevada limited liability company to a Nevada corporation. Plaintiff therefore filed a Motion for Relief from Default Judgment (ECF No. 12) asking Judge Gordon to enter a new judgment to include Symmetric Systems, Inc. ("Symmetric, Inc.") as the successor by conversion of Symmetric, LLC. *Id.*; *see also* Jan. 4, 2016 Mins. of Proceedings (ECF No. 16). Plaintiff subsequently filed a Motion to Amend Complaint (ECF No. 19) seeking to add Symmetric, Inc. as a defendant given the direct relationship of the two entities. Judge Gordon granted Plaintiff's motion to amend and denied as moot the motion for relief from default judgment. April 22, 2016 Order (ECF No. 26). The First Amended Complaint (ECF No. 28) added Symmetric, Inc. as a defendant and expanded Plaintiff's claims for relief as follows: (1) breach of contract against Symmetric, LLC, (2) conversion against all defendants, (3) deceptive trade practices against Symmetric, LLC, (4) fraud against all defendants, (5) alter ego against Mr. Jackson, (6) alter ego against Symmetric, Inc., and (7) corporate successor liability against Symmetric, Inc.

Symmetric, Inc. failed to answer or otherwise respond. Thus, Plaintiff sought and received Clerk's Entry of Default (ECF No. 33). Judge Gordon subsequently granted default judgment against Symmetric, Inc. in the amount of $555,576.19. Apr. 12, 2017 Order (ECF No. 35).

## II.    POST-JUDGMENT PROCEEDINGS

Plaintiff filed the first Motion for Charging Order (ECF No. 21) in February 2016, requesting that Mr. Jackson's ownership interests in several corporations and limited liability companies be charged since he was identified in public records as an officer or manager. A second Motion for Charging Order (ECF No. 52) was filed two years later in February 2018. The court granted the motions and charged nine entities with satisfying the judgment against Jackson: (1) Symmetric Systems, Inc.; (2) Ecommerce Marketing, Inc.; (3) Vinum, Inc.; (4) Symmetric

Systems, LLC; (5) T-3 Media, LLC; (6) Wild West Media, LLC; (7) Pacific Coastal, LLC; (8) Consumercoupons.com, Inc; and (9) Caymus Limited Partnership. Apr. 22, 2016 Order (ECF No. 27); Mar. 12, 2018 Order (ECF No. 53).

Plaintiff filed a Bill of Costs (ECF No. 36) and Motion for Interests and Costs (ECF No. 37) in April 2017. The Clerk of Court taxed costs in the amount of $846.78. ECF No. 38. Judge Gordon awarded pre-judgment interest of $72,250.36. Order (ECF No. 46). Additionally, post-judgment interest was awarded from April 12, 2017, until paid in full, and the Clerk was instructed to enter an amended judgment to include the original judgment amount of $555,576.19, plus pre-judgment interest and costs previously taxed. *Id.*; Oct. 17, 2017 Am. Judgment (ECF No. 47).

### III.   STATE COURT LITIGATION

On April 4, 2017, Plaintiff filed suit in the Eighth Judicial District Court of the State of Nevada against seven entities named in the charging orders with ties to Jackson: (1) Ecommerce Marketing, Inc.; (2) Vinum, Inc.; (3) T-3 Media, LLC; (4) Wild West Media, LLC; (5) Pacific Coastal, LLC; (6) Consumercoupons.com; and (7) Caymus Limited Partnership. Opp'n Ex. B, Compl. (ECF No. 59-2), *GenX Processors Mauritius Ltd. v. Ecommerce Marketing, Inc.*, A-17-753472-C (the "state litigation"). The complaint alleged the case arises from the judgment Plaintiff acquired in this court in September 2015 and the related charging order entered in April 2016. Plaintiff alleged that Jackson "has used, and continues to use the Companies to shield his personal assets from execution to satisfy Plaintiff's judgment against him personally." *Id.* at 3, ¶ 15; *see also* Mot. (ECF No. 58) at 8 n.3. Plaintiff alleged one claim of alter ego against all defendants.

In November 2017, Plaintiff filed an amended complaint in the state litigation. Opp'n Ex. C, Am. Compl. (ECF No. 59-3). The amended pleading omits Ecommerce Marketing, Inc. as a defendant and adds a claim against Vinum, Inc. and Caymus Limited Partnership for "Alter Ego, Reverse Peirce." *Id.* at 5, ¶¶ 29–45.

The state litigation is currently ongoing.[1] In July 2018, the state court held a discovery

---

[1] The court may judicially notice any fact "that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice is properly taken of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. *See, e.g., Byrd v.*

3

conference. According to the state court's minutes, the commissioner recommended a discovery cutoff of April 18, 2019, and deadlines of January 18, 2019, for adding parties and amended pleadings, and May 20, 2019, for dispositive motions. A scheduling order was subsequently entered. A bench trial is currently set for July 1, 2019.

In addition, Plaintiff filed an Application of Foreign Judgments in the state court in February 2018. Opp'n Ex. E (ECF No. 59-5), *GenX Processors Mauritius Ltd. v. Matthew G. Jackson*, A-18-769310-F. Plaintiff registered the original default judgment and amended judgment, and this state case is now closed.

### IV.  THE PARTIES' POSITIONS

Plaintiff seeks discovery in aid of its judgment against Defendants / Judgment Debtors Jackson and Symmetric, Inc., f/k/a Symmetric, LLC. The Motion to Compel (ECF No. 58) requests an order compelling Vinum, Inc.; Caymus Limited Partnership; Ecommerce Marketing, Inc.; T-3 Media, LLC; Wild West Media, LLC; Pacific Coastal, LLC; and Consumercoupons.com, Inc. (collectively, the "Charged Entities"[2]) to respond to subpoenas duces tecum served in accordance with NRS 50.165 and Rules 30 and 45 of the Federal Rules of Civil Procedure.[3] *See* Mot. Exs. 1–7 (ECF Nos. 58-1 – 58-7), Subpoenas.

The motion asserts that on April 20, 2017, Plaintiff served a subpoena on the registered agent for each of the Charged Entities. The subpoenas were virtually identical and requested the following from each of the Charged Entities:

> 1. Copies of federal income tax returns for "ENTITY", for the years 2013, through the latest return you have filed, including all schedules and exhibits. Include all United States gift tax returns filed by "ENTITY", since 2013 to the present.
>
> 2. All financial statements prepared for and/or on behalf of "ENTITY", from January 1, 2013, through the present date.
>
> 3. Copies of any and all bank statements for accounts in the name of "ENTITY" from January 1, 2013, to the present.

---

*Phoenix Police Dep't*, 885 F.3d 639 n.3 (9th Cir. 2018). Here, the court takes judicial notice of the status of the state litigation.

[2] The court entered two Charging Orders (ECF Nos. 27, 53) in April 2016 and March 2018 granting Plaintiff's requests to charge Mr. Jackson's ownership interests in multiple LLCs and corporations (*i.e.*, the Charged Entities) because Jackson was identified in public records as an officer or manager of each entity.

[3] Any reference to a "Rule" or "Rules" in this Order refers to the Federal Rules of Civil Procedure.

4

> 4. Front and back copies of any checks, drafts, or money orders issued by "ENTITY", from January 1, 2013, to the present, payable to Mr. Matthew G. Jackson.
>
> 5. Any documents evidencing withdrawals by Mr. Matthew G. Jackson or evidence of membership distributions made by you to Mr. Matthew G. Jackson.
>
> 6. Please furnish all certificates of formation, articles of incorporation or organization, partnership agreements (general or limited), or joint venture agreements by "ENTITY", including all amendments thereto.
>
> 7. Please furnish the following Documents Relating to "ENTITY", from January 1, 2013, to the present:
>
>   (a) minutes of organizational meeting of members or shareholders
>
>   (b) minutes of meetings of the board of directors, if any
>
>   (c) the annual minutes of meetings
>
>   (d) all company or corporate resolutions
>
>   (e) copies of share certificates or member certificates
>
> 8. Any and all Deeds to property held my "ENTITY".
>
> 9. Any and all vehicle titles held by "ENTITY".
>
> 10. Any and all Leases from property held by "ENTITY".

On May 4, 2017, counsel for the Charged Entities served objection letters referencing the subpoenas. Mot. Exs. 8A–8G (ECF Nos. 58-8 – 58-14). The objection letters were substantially similar and claimed that Plaintiff's exclusive remedy was limited to a charging order against Jackson's interests in the Charged Entities and, as such, the subpoenas were impermissible. The letters further claimed that the requested discovery was irrelevant.

Approximately one year later, on May 15, 2018, counsel for the parties conducted a meet and confer conference. Mot. at 3, ¶¶ 8–9. The motion claims that counsel for the Charged Entities agreed to speak with Jackson and determine whether he would be willing to produce anything. *Id.* ¶ 15.[4] On May 25, 2018, counsel indicated the Charged Entities would not be producing documents for the reasons stated in the objection letters. *Id.* ¶ 16; Ex. 9 (ECF No. 58-9), Email from Larson Welsh, Esq. to Aaron Dean, Esq.

The motion asserts that Mr. Jackson has repeatedly refused to respond to multiple rounds of post-judgment discovery requests as well as court orders compelling production and authorizing

---

[4] Counsel for the Charged Entities avers that he does not represent Defendants / Judgment Debtors and disputes Plaintiff's assertion that he would speak with Jackson regarding the subpoenas. Opp'n (ECF No. 59) at 2 n.2.

a judgment debtor examination. This court has already found that Jackson has an ownership interest in the Charged Entities. Charging Orders (ECF Nos. 27, 53). The subpoenas seek documents from each entity relating to the financial and other assets of the Charged Entities to determine whether Jackson was hiding assets within the Charged Entities and whether distributions to Jackson have occurred in violation of the Charging Orders. Plaintiff believes several of the Charged Entities are still operational, generating revenue, and/or making distributions to, or in favor of, Mr. Jackson.

Plaintiff also claims that Jackson has made disingenuous statements under oath in the state litigation regarding his residence and the business operations of certain entities. Jackson has represented that he has no money or is otherwise broke, which calls into question the transfers between Jackson and the Charged Entities and the bona fides thereof. Plaintiff argues its requests are reasonably calculated to lead to the discovery of information about the Judgment Debtors' assets that may be subject to execution, may have been fraudulently transferred between Jackson and the Charged Entities, and may show violations of the Charging Orders. Jackson's obstruction has frustrated all of Plaintiff's efforts to collect on the Judgment and necessitated the instant motion against the Charged Entities. Thus, an award of attorney's fees and costs is warranted.

The Charged Entities contend that the motion should be denied because Plaintiff fails to show: (1) the necessity and relevance of the information sought; and (2) the relationship between a judgment debtor and a nonparty raises a reasonable suspicion to question the legitimacy of asset transfers. Opp'n (ECF No. 59). Necessity is not demonstrated because more than a year passed after Plaintiff served the subpoenas and then filed the motion. Relevance is not shown for multiple reasons. Eight of the ten categories of documents requested are specifically about the Charged Entities' assets, which cannot be used to satisfy the judgments against Jackson the Judgment Debtors. Public policy avoids the unnecessary disclosure of tax returns, and Plaintiff has not shown that the information is otherwise unavailable. The time frame of documents sought in requests one, two, three, four, and seven is overbroad as it seeks documents from 2013 to present, although the Amended Complaint was filed in October 2016. Thus, the subpoenas are not appear reasonably calculated to lead to the discovery of evidence regarding the Judgment Debtors' assets.

In addition, the Opposition argues Plaintiff has not sufficiently alleged, much less shown evidence, to establish that any Judgment Debtor has a relationship with any specific Charged Entity to raise reasonable suspicion about assets being transferred. Citing *Rock Bay, LLC v. Dist. Ct.*, 129 Nev. 205, 298 P.3d 441 (2013), the Charged Entities assert this case lacks the "special circumstances" required to allow discovery of a nonparty's assets. For these reasons, the motion should be denied.

The Charged Entities further argue this court lacks personal jurisdiction over Ecommerce Marketing, Inc. ("Ecommerce").[5] Plaintiff voluntarily dismissed Ecommerce from the state litigation by omitting Ecommerce from the amended complaint, Opp'n Ex. C (ECF No. 59-3). Yet Plaintiff now seeks to compel Ecommerce to respond to a subpoena.

The Reply (ECF No. 61) reiterates that the requests documents are indeed necessary and relevant. The Charged Entities conflate the term "necessary" with expediency based upon the time it has taken for Plaintiff to file the motion. However, the requests meet the proper standard as the documents will undoubtedly be "useful to identify assets that can be used to satisfy a judgment," and/or "discover concealed or fraudulently transferred assets." Reply at 5 (quoting *VFS Fin., Inc. v. Specialty Fin. Corp.*, 3:09-cv-00266-RCJ-VPC, 2013 WL 1413024, at *3 (D. Nev. Apr. 4, 2013) (internal citation omitted)). Because Jackson has refused to comply with all post-judgment discovery, the Charged Entities are Plaintiff's only source of information at this point.

Plaintiff points out that the Charged Entities ostensibly concede the relevance of two subpoena topics (*i.e.*, (4) checks payable to Jackson, and (5) membership distributions to Jackson or withdrawals by Jackson). *See* Opp'n at 6–7. But the Charged Entities still refused to respond and objected to the discovery. Plaintiff asserts the Charged Entities also fail to negate the relevance of the other subpoena topics (*i.e.*, (1) tax returns; (2) financial statements; (3) bank statements; (6) certificates of formation; (7) organizational documents; (8) deeds to property; (9) vehicle titles; and (10) property leases). These topics are relevant as they will shed light on Jackson's financial

---

[5] Ecommerce Marketing was incorporated in Delaware and registered with the State of Nevada as a foreign corporation in February 2011. Reply Ex. 1 (ECF No. 61-1), Nevada Secretary of State Information. Mr. Jackson was listed as the president, secretary, treasurer, and director of Ecommerce Marketing. *Id*.

7

wellbeing and assets and may provide evidence of fraudulent transactions between Jackson and the Charged Entities.  Specifically, topics one, two, and three will show both wages paid and distributions to Jackson, and show all other financial transactions between Jackson and the Charged Entities.  Topics six and seven will show other owners, if any, and show when Jackson is required to receive distributions from the companies, if at all.  Topics eight, nine, and ten will show personal and real property available for Jackson's personal use or that Jackson may have transferred fraudulently to avoid the judgment.  At the very least, the information requested may lead to other discoverable information regarding Jackson's assets or ability to pay the judgment.

Additionally, Plaintiff contends it is not required to show proof of transfers between Jackson and the Charged Entities to justify the subpoenas.  Neither federal law nor Nevada law require an initial evidentiary showing of a fraudulent transfer to authorize post-judgment discovery on a nonparty.  Rather, Plaintiff is merely required to raise reasonable doubt.  Citing *Credit Lyonnais, S.A. v. SGC Intern., Inc.*, 160 F.3d 428, 431 (8th Cir. 1998), Plaintiff argues that Mr. Jackson's failure to comply with a prior discovery order along with his position as the sole officer, director, shareholder, and/or decision-maker of the Charged Entities is sufficient to raise reasonable suspicion about the bone fides of any transfer.  Reply at 8–9 (citing Exs. 1–15 (ECF Nos. 61-1 – 61-15)).  Furthermore, Jackson's obstructionism is the reason Plaintiff has been unable to obtain evidence thus far since Plaintiff has requested the same information from Jackson but he has refused to respond.  Requiring actual proof at this stage would shield obstructionist parties such as Jackson from post-judgment discovery and curb the detection of fraudulent transfers.

The Reply asserts the court has personal jurisdiction over Ecommerce because Ecommerce is Jackson's alter ego.  Mr. Jackson is the sole owner and operator of Ecommerce and the only person associated with its governance.  Reply Exs. 1–2 (ECF Nos. 61-1, 61-2).  As the only shareholder and owner of Ecommerce, there is a clear unity of interest and ownership between Ecommerce and Jackson.  Because personal jurisdiction exists over Jackson and Ecommerce is his alter ego, the court has personal jurisdiction over Ecommerce as well.

For these reasons, Plaintiff argues the court should compel the Charged Entities to respond to the subpoenas and award attorney's fees and costs.

# DISCUSSION

## I. THE COURT MAY PROPERLY EXERCISE JURISDICTION OVER ECOMMERCE

As an initial matter, the court finds that the exercise of personal jurisdiction over Ecommerce is proper.

A district court must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Rule 45. *E.g.*, *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 141 & n.20 (2d Cir. 2014) (collecting cases). Due process requires that a nonresident have "certain minimum contacts" with the forum state such that the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific or "case-linked" jurisdiction "depends on an affiliation between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, --- U.S. ----, 134 S. Ct. 1115, 1121 n.6 (2014) (internal quotation omitted); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

Corporate entities are presumed separate; thus, the mere "existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum," except in certain circumstances. *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001); *Viega GmbH v. Eighth Jud. Dist. Ct.*, 130 Nev. 368, 375, 328 P.3d 1152, 1157 (2014). Agency and alter ego are recognized exceptions. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024–25 (9th Cir. 2017). Upon a showing that a subsidiary is an alter ego of its parent company, the court may attribute the parent's contacts with the forum state to its subsidiary for the purpose of exercising general personal jurisdiction over the subsidiary. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070–71 (9th Cir. 2015) (citing *Unocal Corp.*, 248 F.3d at 925–26). An alter-ego relationship exists for jurisdictional purposes where (1) two companies share "such unity of interest and ownership that in reality separate entities no longer exist and (2) a failure to disregard the entities' separate identities would "result in fraud or injustice." *Williams*, 851 F.3d at 1021. An agency relationship exists where a parent company has "the right to substantially control its subsidiary's activities." *Id.* at 1024–25.

Here, Plaintiff has shown that Ecommerce is Jackson's alter ego for jurisdictional purposes. Both Jackson and Ecommerce share a unity of interest and ownership since Jackson is the sole shareholder, owner, and operator of Ecommerce. Filings with the Nevada Secretary of State show that Jackson was the president, secretary, treasurer, and director of Ecommerce. Reply Ex. 1 (ECF No. 61-1). Jackson testified there was no one else at Ecommerce and the company had no past employees, directors, or officers. Reply Ex. 2 at 15–16 (ECF No. 61-2). These facts demonstrate that Ecommerce would not exist without Jackson and their interests are one in the same. As the sole corporate officer since inception, Jackson's ownership of Ecommerce is unquestioned, which renders Ecommerce a mere instrumentality of Jackson. The court finds that a failure to disregard their separate identities would result in fraud or injustice. Ecommerce purposely availed itself of the privilege of doing business in Nevada by registering with the Nevada Secretary of State as a foreign corporation. *See NML Capital*, 2015 WL 1186548, at *14. A company cannot register to do business in this jurisdiction and "then excuse itself from the court's subpoena power by abusing the corporate form. This would allow a corporation to exploit the benefits created by the law without shouldering the concomitant burdens and responsibilities imposed by the law." *Id.* Accordingly, the court finds that Ecommerce is Jackson's alter ego for jurisdictional purposes, and personal jurisdiction over Ecommerce does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316.

## II. THE SUBPOENAS TO THE CHARGED ENTITIES ARE APPROPRIATE UNDER RULE 69

### A. Legal Standards

Rule 69 authorizes a judgment creditor to "obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located. Fed. R. Civ. P. 69(a)(2). The scope of discovery under Rule 69 is very broad. *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 134 S. Ct. 2250, 2254 (2014) (noting that the "rules governing discovery in post-judgment execution proceedings are quite permissive"); 12 *Fed. Prac. & Proc. Civ.* § 3014, Discovery in Aid of Execution (2d ed. Sept. 2018 update). Post-judgment discovery is permissible so long as it is within the scope of the Federal Rules of Civil Procedure or the Nevada Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(1); Nev. R. Civ. P.

26(b)(1); *see also El Salto, S. A. v. PSG Co.*, 444 F.2d 477, 484 n.3 (9th Cir. 1971).

"The presumption is in favor of full discovery of any matters arguably related to the creditor's efforts to trace the debtor's assets and otherwise to enforce its judgment." *ClearOne Communications*, *Inc. v. Chiang*, 276 F.R.D. 402, 404 (D. Mass. 2011). The judgment creditor has "wide latitude" in conducting post-judgment discovery. *E.I. DuPont de Nemours & Co. v. Kolon Indus.*, *Inc.*, 286 F.R.D. 288, 291 (E.D. Va. 2012) (quoting *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 293 (E.D.N.Y. 2011)). In general, a " 'judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor'." *Id.* at 291 (quoting *Caisson Corp. v. County W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974)). "One purpose of post-judgment discovery is to identify assets that can be used to satisfy a judgment. Another purpose is to discover concealed or fraudulently transferred assets." *See, e.g.*, *VFS Fin., Inc. v. Specialty Fin. Corp.*, 3:09-cv-00266-RCJ-VPC, 2013 WL 1413024, at *3 (D. Nev. Apr. 4, 2013) (internal citation omitted).

Judgment creditors may obtain information from parties and nonparties alike to aid in locating the judgment debtor's assets. *Rock Bay, LLC v. Dist. Ct.*, 129 Nev. 205, 210, 298 P.3d 441, 445 (2013); *Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 8 (D.D.C. 2006). In the post-judgment context, discovery from nonparties is generally limited to a judgment debtor's assets, and judgment creditors may not inquire into the nonparties' assets. *Rock Bay*, 129 Nev. at 210, 298 P.3d at 445 (citing *Caisson*, 62 F.R.D. at 334 (holding that inquiries of nonparties under FRCP 69(a) "must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment" of the nonparties)). However, courts should not apply this general rule mechanically. *Id.* (citing *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977)). "Because the purpose of post-judgment discovery is to locate the judgment debtor's assets," the Nevada Supreme Court has expressly held that "discovery of a nonparty's assets is permissible if it will lead to discovery of 'hidden or concealed assets of the judgment debtor'." *Id.* (citing *Caisson*, 62 F.R.D. at 334). Thus, courts should permit probing questions for nonparties with close ties to a judgment debtor. *E.I. DuPont de Nemours*, 286 F.R.D. at 292–95 (judgment debtor owned and had control over subsidiaries; thus, subsidiaries

were compelled to provide their customer information); *Magnaleasing*, 76 F.R.D. at 562 (discovery of nonparty's assets was compelled where same individuals controlled nonparty and judgment debtor, and judgment creditor alleged nonparty was involved in hiding debtor's assets); *see also* 12 Fed. Prac. & Proc. Civ. § 3014.

**B. Analysis**

Plaintiff has made a threshold showing of relevance and necessity to justify the subpoenas to the Charged Entities. Plaintiff is not required to meet an initial evidentiary showing of a fraudulent transfer to authorize post-judgment discovery on the Charged Entities. Nevertheless, Jackson's failure to comply with prior discovery orders along with Jackson's position as the sole officer, director, shareholder, and/or decision-maker of the Charged Entities is sufficient to raise a reasonable suspicion about the bone fides of any transfer. Jackson's failure to respond to any post-judgment discovery to date has increased Plaintiff's need for the requested documents. Based on Jackson's close ties to the Charged Entities, the court finds that Plaintiff's probing subpoena requests are appropriate and are not being used as a means of harassment.

Furthermore, the requests are not overbroad or unduly burdensome. Plaintiff's subpoena topics are reasonably calculated to lead to the discovery of information about the judgment debtors' assets that may be subject to execution, may have been fraudulently transferred between Jackson and the Charged Entities, or may show violations of the Charging Orders. Plaintiff commenced this action in November 2014. The subpoenas request documents from 2013 to present. Because the requests reach back only one year prior to the filing of the original complaint, the time frame is not overbroad. The subpoenas seek documents relating to the Charged Entities' assets to determine whether Jackson was and is hiding assets within the Charged Entities and whether distributions to Jackson have occurred in violation of the Charging Orders. The relevance of the requests is facially apparent. Given the broad discovery permitted by Rule 69, the document requests are described with particularity and sufficiently tailored.

Plaintiff has made a threshold showing for production of the Charged Entities' tax returns. "Nevada does not recognize a privilege for financial documents;" however, financial status should not be had for the mere asking. *Rock Bay*, 129 Nev. at 213, 298 P.3d at 447 (citation omitted).

Although courts are reluctant to require disclosure of income tax returns, motions to compel the production of tax returns in the context of post-judgment discovery are routinely granted. *See Libaire*, 760 F. Supp. 2d at 294–95 (collecting cases). "In the context of post-judgment discovery, courts have recognized that a nonparty's privacy interests 'must be balanced against the need of the judgment creditor' for the requested information." *Rock Bay*, 129 Nev. at 213, 298 P.3d at 447 (quoting *Blaw Knox Corp. v. AMR Industries, Inc.*, 130 F.R.D. 400, 403 (E.D. Wis. 1990)). A judgment creditor's need to examine a nonparty's financial records outweighs the nonparty's privacy interest where "there are reasonable doubts as to the good faith of the transfer of assets between the nonparty and the judgment debtor, and the judgment creditor is not a competitor of the nonparty." *Id.* (citing *Falicia*, 235 F.R.D. at 9–10). Here, Plaintiff has established reasonable suspicion regarding any potential transfers between Jackson and the Charged Entities. The Charged Entities have not alleged that Plaintiff is a competitor. The court therefore finds that Plaintiff's need to examine the tax returns outweighs the Charged Entities' privacy interests. The motion is granted. The Charged Entities must fully respond to the subpoenas **on or before November 26, 2018**.

### III. PLAINTIFF IS NOT ENTITLED TO AN AWARD OF FEES AND COSTS

The motion asserts that Plaintiff is entitled to an award of fees and costs pursuant to Rule 37. The rule provides:

> If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5). The court may not use the enforcement remedies contemplated in Rule 37 for a nonparties' failure to comply with a subpoena. *See, e.g.*, *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983) (Rule 37 sanctions may not be applied "against

a nonparty for failure to comply with a subpoena duces tecum"); *In re Plise*, 506 B.R. 870, 877 (B.A.P. 9th Cir. 2014). Rule 37 applies to motions to compel production only from a "party" under Rule 34, which in turn provides that motions to compel production from nonparties are governed by Rule 45. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."); Fed. R. Civ. P. 45(e)

The only authority in the Rules for imposing sanctions against a nonparty for failure to comply with a subpoena duces tecum is Rule 45(e). *In re Plise*, 506 B.R. at 877 (citing *Pennwalt*, 708 F.2d at 494). Under Rule 45, a court may hold in contempt a person who fails "without adequate excuse" to obey a subpoena. Fed. R. Civ. P. 45(e). A nonparty served with a subpoena has three options: it may (1) comply with the subpoena, (2) serve an objection on the requesting party in accordance with Rule 45(c)(2)(B), or (3) move to quash or modify the subpoena in accordance with Rule 45(c)(3). *In re Plise*, 506 B.R. at 878. Timely written objections to a subpoena in accordance with Rule 45(c)(2)(B) qualify as an "adequate excuse" for noncompliance. *Id.* (citing *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 930 (N.D. Ill. 2010); *In re Exxon Valdez,* 142 F.R.D. at 385). When a nonparty raises timely objections to the subpoenas, the nonparty is not required to produce documents, or even search for them, until the propounding party obtains an order directing compliance. *Pennwalt*, 708 F.2d at 494 & n.5; *In re Plise*, 506 B.R. at 878; *DeGeer*, 755 F. Supp. 2d at 930. An award under Rule 37(a)(5) of reasonable expenses incurred in bringing a motion to compel before a discovery order is entered is simply not an available remedy for cases involving nonparty subpoenas duces tecum under Rule 45. *In re Plise*, 506 B.R. at 879.

Here, Plaintiff argues that Rule 37 fees and costs are still appropriate because the subpoenas commanded the Charged Entities to appear for depositions on May 9, 2017. Plaintiff contends the Charged Entities' failure to appear for deposition or move to quash the subpoena is sufficient to award fees and costs. The court disagrees. The motion does not seek to compel the Charged Entities attendance at a deposition, it seeks the production of documents. Thus, Plaintiff's motion is properly assessed under Rule 45, not Rule 37. Although Ninth Circuit case law allows Rule 37(a)(5) sanctions for nonparties who fail to appear for depositions, the Charged Entities timely filed objections to the subpoenas. Under Rule 45(c)(2)(B), their compliance was excused until

Plaintiff obtained an order directing compliance. *See Pennwalt*, 708 F.2d at 494 & n.5; *In re Plise*, 506 B.R. at 87. Thus, Plaintiff's request for an award of fees and costs under Rule 37 lacks merit.

For the reasons explained,

**IT IS ORDERED:**

1. Plaintiff Genx Processors Mauritius Limited's Motion to Compel Responses to Subpoenas and Attorney Fees (ECF Nos. 58, 60) and Motion to Exceed Pages are **GRANTED**.
2. The Charged Entities must fully respond to Plaintiff's subpoenas and produce the requested discovery **on or before November 26, 2018**.

Dated this 2nd day of November, 2018.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE